**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TAYLOR CLINES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-CV-00153-NAB |
| | ) | |
| SPECIAL ADMINISTRATIVE BOARD | ) | |
| TRANSITIONAL SCHOOL DISTRICT OF | ) | |
| THE CITY OF ST. LOUIS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on two motions to dismiss, one filed by Defendants Special Administrative Board Transitional School District of the City of St. Louis ("SAB") and Thamous Wooten ("Wooten") (collectively "Defendants") (Doc. 98), and one filed by Defendant Wooten (Doc. 100). Also before the Court is Defendants' Motion to Stay Discovery and Further Proceedings pending disposition of Defendants' Motions to Dismiss. (Doc. 102.) The motions have been fully briefed and are ripe for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Court will deny Defendants' Motions to Dismiss. By way of that ruling, Defendants' Motion to Stay (Doc. 102) is moot and is therefore denied.

**I.      Background**

**A. Factual History**

For purposes of the pending motions to dismiss, all facts alleged in the Second Amended Complaint are accepted as true and viewed in the light most favorable to Plaintiffs.

Plaintiff Taylor Clines ("Taylor") was a student at Gateway Stem High School ("Gateway STEM") in the special education program. Taylor suffers from autism and is almost entirely non-verbal. Plaintiffs Diane and Damon Clines are Taylor's legal guardians.

Defendant SAB is a government entity organized under the laws of Missouri. SAB governed the St. Louis Public Schools district ("SLPS"), including Gateway STEM. SAB is responsible for the delivery of educational services to Taylor. Defendant Thamous Wooten is an Intermediate Care Assistant ("ICA") employed by SAB. On the day of the incident that gave rise to this lawsuit, Wooten was serving as a substitute ICA at Gateway STEM.

SAB's policy was to utilize the MANDT System, a comprehensive approach to preventing, de-escalating, and intervening when behavior of special needs students poses a threat to harm special education students or others. MANDT prohibits taking a person off balance or hyperextending limbs. SAB prohibits the use of corporal punishment at Gateway STEM.

Taylor was assigned an ICA and an interpreter at school due to his disabilities. If Taylor's regular ICA was absent, a substitute ICA was to be assigned by the department director and/or principal. SAB was aware Taylor had a tendency "to hit and/or kick objects and people" which should be modified with "calmly signing/verbalizing Taylor to calm down and first take his ten deep breaths."

On February 4, 2013, Taylor's interpreter was out sick, and his regular ICA was assigned to another project by SAB. Taylor was assigned Wooten as a substitute ICA. The assignment was made less than an hour prior to Taylor's scheduled arrival. Wooten had never been assigned to Taylor before, but he was aware of Taylor's tendency to kick. Upon being assigned to Taylor that morning, Wooten was provided no specific guidance as to Taylor's needs. When Taylor arrived at school on February 4, he did not meet with staff to discuss the absence of both his caregivers, he

became agitated with the disruption to his routine, and he began to act out by kicking at Wooten. Wooten responded to the first and second kick attempts by utilizing MANDT training. On the third kick, Wooten responded by grabbing Taylor's foot and throwing it upwards, causing Taylor to fall to the ground. Taylor suffered broken bones and a dislocated elbow. Following the investigation into this incident, Wooten was reassigned to another school within the district.

Prior to this incident, SAB staff had at least one prior incident involving Taylor. On October 2, 2012, Taylor was forcefully pushed and likely slapped by a staff member during one of Taylor's kicking episodes. SAB investigated the incident and found staff members had misrepresented the incident, which had been captured on video. The staff member who pushed Taylor and misrepresented what had occurred was assigned to another classroom.

### B. Procedural History

Taylor and his guardians Diane and Damon Clines (collectively "Plaintiffs") brought this action against Defendants by filing a three-count Complaint on January 31, 2018. (Doc. 1.) On June 20, 2018, Plaintiffs filed a First Amended Complaint. (Doc. 20.) Plaintiffs' First Amended Complaint clarified the proper Defendant entity. On June 25, 2018, Defendants SAB and Wooten filed their respective answers to Plaintiffs' First Amended Complaint. On February 26, 2019, Defendants sought leave to add the affirmative defense of failure to exhaust administrative remedies under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (Doc. 44.) The Court granted Defendants' motion for leave to file the additional affirmative defense. (Doc. 55.) On June 14, 2019, Plaintiffs moved for leave to file a Second Amended Complaint, stating the purpose of the amendments was to reflect evidence revealed during discovery and not to create any new causes of action. (Doc. 80.) The Court granted the motion. (Doc. 92.)

Plaintiffs' Second Amended Complaint[1] alleges three counts. Count I is categorized as "Substantive Due Process-Bodily Integrity" against Defendant SAB for violation of Plaintiff Taylor Clines' substantive due process right under 42 U.S.C. § 1983 through its (i) custom, policy, and procedures that were put in place by Defendant SAB that led to the violation, (ii) Defendant SAB's failure to properly train and supervise its employees, and (iii) Defendant SAB's creation of the danger to Plaintiff Taylor Clines. Count II is categorized as "Substantive Due Process-Bodily Integrity" against Defendant Wooten for violation of Taylor's substantive due process rights under 42 U.S.C. § 1983. Count III is a state law tort claim for recklessness against Defendant Wooten. Plaintiffs seek an award of compensatory and punitive damages, attorney's fees and costs.

## II.    Standard of Review

"In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments." *Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1050 (8th Cir. 2006). Federal Rule of Civil Procedure 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction over a claim. To dismiss an action under Rule 12(b)(1), the complaint must either be successfully challenged on the factual truthfulness of its assertions, or successfully challenged on its face. *Archdiocese of St. Louis, v. Sebelius*, No. 4:12-CV-924 JAR, 2013 WL 328926 at *4 (E.D. Mo. Jan. 29, 2013). A court deciding a motion under Rule 12(b)(1) must distinguish between a facial attack and a factual attack on jurisdiction. *Osborn v. U.S.*, 918 F.2d

---

[1] Plaintiffs filed a Proposed Second Amended Complaint as an attachment to their Motion for Leave to File Second Amended Complaint. (Doc. 80-1.) On the day Plaintiffs filed their reply brief in support of their motion, they also filed a **Revised** Proposed Second Amended Complaint. (Doc. 87.) On the day the Court granted leave to file the Second Amended Complaint, Plaintiffs filed a Second Amended Complaint (Doc. 93), which appears to be the same or substantially similar to the original Proposed Second Amended Complaint (Doc. 80-1). Both parties have acknowledged the discrepancy, and Plaintiffs "request the Court substitute the Second Amended Complaint of Doc. 87 which does not include claims against Defendant Wooten in his official capacity." (Doc. 108, at 1.) Defendants have not stated any objection to this request or to Plaintiffs' removal of the claim against Defendant Wooten in his official capacity. Accordingly, the Court will consider Doc. 87 to be the operative Second Amended Complaint in this case.

724, 729, n. 6 (8th Cir. 1990). In a facial attack, the court restricts itself to the face of the pleadings and in a factual attack, the court considers matters outside the pleadings. *Id.* Because Defendants' motion is a facial attack regarding jurisdiction, the non-moving party receives the same protections it would have in defending a motion under Rule 12(b)(6).

To survive a Rule 12(b)(6) motion, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Iqbal*, 556 U.S. at 679. A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The Court must accept a plaintiff's factual allegations as true and construe them in the plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common

5

sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III.    Discussion

### A.  Exhaustion of Remedies under the IDEA

Defendants argue that the Second Amended Complaint must be dismissed for failure to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA") prior to filing this lawsuit. Plaintiffs do not dispute that they did not exhaust administrative remedies. Rather, they argue they are not subject to the IDEA's exhaustion requirements because the gravamen of the Second Amended Complaint is an attack by Wooten on Taylor, not a denial of a free appropriate public education.

The IDEA is a federal statute that "established procedural safeguards to ensure individuals with disabilities will have the opportunity to obtain a free appropriate public education." *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 592 (8th Cir. 2013) (citing 20 U.S.C. § 1415(a)). "The primary tool for implementing the aims of the IDEA is the IEP, which tailors the statutorily required free appropriate public education to each child's unique needs." *Id.* (citing *Honig v. Doe*, 484 U.S. 305, 311 (1987)). "The other safeguards include an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and an opportunity for an impartial due process hearing with respect to any such complaints." *Id.* (citing *Honig* at 310-11). "A party aggrieved by the outcome of an IDEA due process hearing may challenge the outcome before the state educational review agency." *Id.* "The

outcome of the review hearing may then be disputed in district court." *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)). "However, before parties may bring a claim in district court under a different statute for which they seek relief which is also available under the IDEA, the parties must first exhaust the administrative remedies under the IDEA." *Id.* (citing 20 U.S.C. § 1415(l)). The IDEA provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). "The IDEA exhaustion requirement applies to claims brought under section 504 or other federal statutes only to the extent those claims seek relief that is also available under the IDEA." *M.Y. ex rel J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008).

In *Fry v. Napoleon Community Schools,* the Supreme Court "consider[ed] the scope of that exhaustion requirement," and held "that exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the Act calls a 'free appropriate public education [FAPE].' § 1412(a)(1)(A)." *Fry*, 137 S. Ct. 743, 748 (2017).

In "determining whether a suit indeed 'seeks' relief for [denial of a FAPE], a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id.* at 752. "The use (or non-use) of particular labels and terms is not what matters." *Id.* at 755. The inquiry "does not ride on whether a complaint includes (or, alternatively, omits) the precise words 'FAPE' or 'IEP.'" *Id.* Rather, exhaustion is required "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id.* at 755. Any other approach "would allow plaintiffs to evade the Act's restrictions through artful pleading." *Id.* That

said, if "the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." *Id.* at 754. "A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute." *Id.* at 757.

Here, an examination of the allegations will assist the Court in determining the gravamen of Plaintiffs' claims. *See, e.g., J.M. v. Francis Howell Sch. Dist.,* 850 F.3d 944, 948-49, 2017 WL 894460 at *3 (8th Cir. 2017) (surveying the allegations in the complaint to determine the gravamen). With respect to Taylor's education, the Second Amended Complaint alleges Taylor suffers from autism, and he is to be assigned an ICA and an interpreter due to his disabilities. It alleges Wooten was an ICA assigned to Taylor on the day of the incident. It alleges that Taylor's IEP explicitly stated that when he becomes upset he has a "tendency to escalate into tantruming that involves grabbing and throwing items within reach, attempting to hit and/or kick objects and people within reach with the possibility of injuring himself and/or others." Pursuant to the IEP, "[a] para-educator is required to assist with supervision through the day to ensure safety."

Defendants contend that the Second Amended Complaint, as well as the Complaint and First Amended Complaint, demonstrate that Plaintiffs' claims are "essentially a charge that [Taylor] was provided an ineffective ICA who failed to implement the terms of the IEP," and the SAB's obligation to address Taylor's known propensities included in his IEP is within the IDEA's guarantee to provide a FAPE. Defendants emphasize that Plaintiffs' Complaint and First Amended Complaint rely heavily on Taylor's IEP as the source of Defendants' knowledge regarding Taylor's propensities to hit and kick. In fact, the First Amended Complaint expressly references

8

Taylor's IEP 25 times. In contrast, the Second Amended Complaint only makes two express references to the IEP, despite the IEP being utilized as the source of Defendants' knowledge.[2]

Plaintiffs' elimination of references to the IEP in the Second Amended Complaint appears to be precisely the type of "artful pleading" that the Supreme Court warned against in *Fry. See Fry,* 137 S. Ct. at 755. Nevertheless, the Court looks beyond the inclusion or omission of the IEP to determine the gravamen of the claims against Defendants. *See, e.g., Moore v. Kansas City Public Schools,* 828 F.3d 687, 692 (8th Cir. 2016) (references to a student's IEP "do not convince us that the propriety of D.S.'s IEP is the 'central dispute of this litigation,' as the defendants suggest, or that any matter related to D.S.'s disability and education raises issues concerning the 'educational placement' of D.S., thereby implicating the IDEA.").

Plaintiffs allege that "Wooten's attack on Taylor Clines was a violation of [his] bodily integrity under the 14th Amendment of the United States Constitution and was an unjustified intrusion of personal security." Second Amended Complaint, ¶ 64. Both § 1983 claims against Defendants and the recklessness claim against Wooten arise from the allegations that Wooten "took forceful and violent action" against Taylor, and Wooten's "reaction was the result of anger and frustration over Plaintiff Taylor Clines' kicking Defendant Wooten." *See* Second Amended Complaint, ¶¶ 63, 74, 75, 94, 95. The factual allegations show the gravamen of the wrongfulness of Defendants' conduct is not that it violated the IDEA, but that it involved unlawful and unreasonable use of physical force against Taylor. *See, e.g., K.G. by & through Gosch v. Sergeant*

---

[2] The following is only one example of several revised allegation that eliminate references to the IEP in the Second Amended Complaint:

"The IEP in place on February 4, 2013 specifically called for an ICA to meet Taylor at the door each day, and, advised that Taylor had a tendency 'to hit and/or kick objects and people' which should be modified with 'calmly signing/verbalizing Plaintiff to calm down and take his ten deep breaths.'" (First Amended Complaint, ¶ 16.)

"On February 4, 2013, and well prior to, Defendants were specifically aware Taylor had a tendency 'to hit or kick objects and people' which should be modified with 'calmly signing/verbalizing Taylor to calm down and first take his ten deep breaths.'" (Second Amended Complaint, ¶ 18.)

*Bluff-Luton Cmty. Sch. Dist.*, 244 F. Supp. 3d 904, 921 (N.D. Iowa 2017) (where student with autism was dragged across the floor by his teacher, references to student's educational objectives in the complaint, including IEP which identified behaviors of concern, were "to show the 'unreasonableness' of [the teacher's] conduct, not the 'gravamen' of her wrongful conduct, which is the use of 'unjustified and unreasonable force' against K.G."); *Doe v. Aberdeen Sch. Dist.*, 2019 WL 4740163, at *4 (D.S.D. Sept. 27, 2019) (where student with autism spectrum disorder was pushed, shoved, and dragged into a separate room for confinement by teacher and education aides, "plaintiffs do not merely claim the alleged abuse prevented their children from benefitting from a public education. Rather they claim a separate and distinct harm arising from the alleged abuse."). Plaintiffs' allegations regarding Defendants' obligations or knowledge about Taylor's tendencies to kick based on the IEP are made as an indication of the unreasonableness of the use of force, not to illustrate a denial of an educational benefit. *See K.G.,* 244 F.Supp.3d at 921 ("The allegation that the use of force was contrary to the IEP and BIP is made as an indication of the *unreasonableness* of the use of force, not as the *gravamen* of the wrongfulness of the conduct.") (emphasis in original).

To be sure, in *Fry,* the Supreme Court explained that a pair of hypothetical questions provides clues as to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the

school setting (not an adult in that setting or a child in some other) has a viable claim.

*Fry*, 137 S. Ct. at 756. There, the Supreme Court addressed a similar hypothetical to Plaintiffs' allegations in this case:

> …suppose that a teacher, acting out of animus or frustration, strikes a student with a disability, who then sues the school under a statute other than the IDEA. See Brief for Respondents 36–37. Here too, the suit could be said to relate, in both genesis and effect, to the child's education. But the school districts opine, we think correctly, that the substance of the plaintiff's claim is unlikely to involve the adequacy of special education—and thus is unlikely to require exhaustion. See *ibid.* A telling indicator of that conclusion is that a child could file the same kind of suit against an official at another public facility for inflicting such physical abuse—as could an adult subject to similar treatment by a school official. To be sure, the particular circumstances of such a suit (school or theater? student or employee?) might be pertinent in assessing the reasonableness of the challenged conduct. But even if that is so, the plausibility of bringing other variants of the suit indicates that the gravamen of the plaintiff's complaint does not concern the appropriateness of an educational program.

*Id.* at 756 n.9. Defendants argue that to describe the hypothetical posed in *Fry* as similar to Plaintiffs' case mischaracterizes the nature of the incident between Taylor and Wooten. Defendants suggest that a plaintiff could not state a viable claim under § 1983 against a library or theater based on a failure to train personnel on how to instruct, handle, or apply de-escalation techniques in response to an autistic adolescent's challenging behaviors. Nor could an adult successfully sue a school that refused to provide him with specialized teachers, trained in proper de-escalation techniques. The Court disagrees with Defendants' characterization of the claims. The crux of Plaintiffs' allegations is not Wooten's failed attempts to use de-escalation techniques, it is Wooten's "forceful and violent action against" Taylor in grabbing his foot and throwing it upwards to force him to the ground. Taylor could have brought a claim for this conduct had it occurred at a non-school public facility, and an adult employee or visitor of the school could similarly bring claims for redress of the resulting injuries, suggesting the Second Amended Complaint does not

state a claim for denial of FAPE. *See, e.g., K.G.*, 244 F. Supp. 3d at 921 (plaintiff with autism who was dragged across the floor by teacher after he began to act out could answer both *Fry* questions in the affirmative); *Doe,* 2019 WL 4740163, at *4 (answering both *Fry* questions in the affirmative where special needs plaintiff was pushed, shoved, or dragged by teacher).

Accordingly, the Court finds that the gravamen of Plaintiffs' claims is not for denial of a FAPE. Thus, Plaintiffs were not required to exhaust administrative remedies under the IDEA prior to filing their claims in court.

### B.  Section 1983 Claims against SAB and Wooten

Count I against SAB and Count II against Wooten in his individual capacity allege violations of substantive due process. The Due Process Clause protects individuals against arbitrary exercises of government power, but "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *County of Sacramento v. Lewis,* 523 U.S. 833, 845-46 (1998) (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 129 (1992)). To be arbitrary in the constitutional sense, an executive abuse of power must "shock[] the conscience." *Id.* The Due Process Clause does not "impos[e] liability whenever someone cloaked with state authority causes harm." *Id.* at 848. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849. Although negligently inflicted harm is not sufficient to shock the conscience, intentional conduct to injure in some unjustifiable way most likely rises to the conscience-shocking level. *Id.* at 834.

Adequate pleading of a substantive due process claim is a high standard, as

> [t]he government action must be truly irrational and consist of conduct that is more than merely arbitrary, capricious, or violative of state law. Substantive due process is concerned with violations of personal rights ... so severe ... so disproportionate to the need presented, and ... so inspired by

> malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience.

*Golden v. Anders,* 324 F.3d 650, 652-53 (8th Cir. 2003) (internal quotations omitted).

Defendants argue that the conduct alleged does not rise to the level of a constitutional violation, and Plaintiffs seek to impose tort liability through a due process claim, as illustrated by the fact that Plaintiffs' tort law claim for recklessness against Wooten arises from the same allegations. Defendants argue "[t]he [Second Amended Complaint] does not describe a pattern of abuse by Wooten; it does not allege that Wooten struck Plaintiff, threw Plaintiff, or engaged in an action with the purpose of injuring Plaintiff." (Doc. 109, at 4.)

Plaintiffs argue that reckless conduct can be deemed to shock the conscience, relying on *County of Sacramento v. Lewis.* There, the Supreme Court acknowledged that in one instance, "deliberate indifference [to the medical needs of pretrial detainees was] egregious enough to state a substantive due process claim in one context… but rules of due process are not subject to mechanical application in unfamiliar territory, and the need to preserve the constitutional proportions of substantive due process demands an exact analysis of context and circumstances before deliberate indifference can be condemned as conscience shocking." 523 U.S. 833, 834-35 (1998). Plaintiffs have not provided specific examples of reckless conduct rising to the level of a constitutional violation, and the Eighth Circuit has held that actions categorized as "grossly negligent or even reckless" will not suffice to shock the conscience. *See S.S. v. McMullen,* 225 F.3d 960, 964 (8th Cir. 2000); *see also Parton v. City of Bentonville*, 901 F. Supp. 1440, 1444 (W.D. Ark. 1995) (explaining that recklessness is a "lesser concept[] of culpability" than the "shocks the conscience" standard).

Because rules of due process "demand an exact analysis of context and circumstances before deliberate indifference can be condemned as conscience shocking," determination of whether Defendants' conduct "shocks the conscience" is a difficult question on a motion to dismiss for failure to state a claim. Indeed, there are few cases within the Circuit addressing the issue at this procedural posture. Those that find the conduct alleged did not rise to a constitutional violation observed that the allegations were bare assertions lacking factual enhancement regarding the alleged conduct, which is insufficient to state a claim under Rule 12(b)(6).

For example, in *C.N. v. Willmar Public Schools, Independent School Dist. No. 347,* a special education student ("C.N.") who was prone to behavioral problems and disruptions had a behavioral intervention plan ("BIP") and an IEP that permitted controlled procedures such as restraint positions and seclusion. 591 F.3d 624, 627-28 (8th Cir. 2010). The plaintiff's (C.N.'s) complaint alleged the following:

> While attending Lincoln, C.N. worked with Defendant Lisa Van Der Heiden, a special education teacher. Van Der Heiden sometimes used the controlled procedures authorized in C.N.'s BIP, and recorded the incidents in behavioral and communication logs she kept for her students. The complaint alleges that during C.N.'s time under her care, Van Der Heiden used those techniques improperly and excessively and also mistreated C.N. For example, Van Der Heiden allegedly made C.N. sit at a "thinking desk" and hold a physical posture for a specified time, or else face restraint or seclusion. Van Der Heiden also allegedly yelled and shouted at C.N., demeaned and belittled C.N., once pulled C.N.'s hair when she would not hold a posture at the thinking desk and once denied C.N. use of the restroom, causing an accident. C.N. also reported to J.N. that Van Der Heiden "choke[d] her and that the restraints hurt her very much."

*Id.* at 628. A paraprofessional reported Van Der Heiden to the Minnesota Department of Education ("MDE"), and this was her third such report for maltreatment. The MDE investigation concluded Van Der Heiden violated a number of C.N.'s rights, and maltreated C.N. by denying her access to the restroom. *Id.* Prior to these events, the school district had already conducted similar

14

investigations into Van Der Heiden on two occasions but found no misconduct. *Id.* During the MDE investigation, the school district placed Van Der Heiden on leave and conducted its own investigation into allegations that Van Der Heiden mistreated C.N. and another student. *Id.* This time, the school district attributed Van Der Heiden's conduct to a lapse in judgment, and she was never disciplined. Van Der Heiden remained at the school but had no further contact with C.N. *Id.* at 628-29.

C.N. alleged "defendants violated C.N.'s right to substantive due process by denying her a FAPE and engaging in behavior that shocks the conscience of reasonable persons and is intolerable in a civilized society." *C.N. ex rel. J.N. v. Willmar Pub. Sch.*, 2008 WL 3896205, at *7 (D. Minn. Aug. 19, 2008), *aff'd sub nom.* 591 F.3d 624 (8th Cir. 2010). The district court found C.N. made a "bald accusation without linking specific facts to their claim," and defendants' behavior was reasonable because the IEP allowed the use of restraints and holds and seclusion. *Id.* With respect to the claim against the school district, the court found C.N. failed to identify any district custom or policy that the defendant school officials relied upon in allegedly violating C.N.'s rights. *Id.* at *5. The district court therefore denied the § 1983 claims with prejudice. *Id.*

On appeal, C.N. argued her complaint alleged conscience shocking behavior, pointing to allegations that Van Der Heiden physically and verbally abused disabled children in her care. 591 F.3d at 634. The Eighth Circuit disagreed, explaining that "[s]ome of the abuse allegations do not even identify C.N. as the victim of the alleged mistreatment—rather, the complaint simply asserts that on unspecified dates and under circumstances not described, Van Der Heiden allegedly mistreated unidentified disabled children in a variety of ways." *Id.* "[E]ven those allegations that are specific to C.N. are little more than general assertions of harm, lacking elaboration as to the context of the alleged incidents or resulting injuries." *Id.* at 635.

15

In *Jackson v. Pine Bluff School District,* an autistic student alleged mistreatment and deprivations used to address her behavior. 2017 WL 2296896, at *2 (E.D. Ark. May 12, 2017), *report and recommendation adopted,* 2017 WL 2296956 (E.D. Ark. May 25, 2017). She alleged various federal and state law claims including a § 1983 claim against the school, the school district, the Arkansas Department of Education ("ADE"), and the ADE Commissioner Johnny Key ("Key").[3] *Id.* at *1. The substantive due process violation arose from allegations that Key and the ADE failed "to monitor, regulate, and supervise" the conduct of the school district and school, which violated her substantive due process rights by "acting with deliberate indifference to the risk of harm after D was subjected to physical abuse at the [school] and after [plaintiffs] requested that D return to [] campus." *Id.* at *9.

In analyzing the complaint, the court found it vaguely alleged the school subjects "students with severe disabilities. . . to restraints and abuse" and plaintiff specifically was subjected to "observed acts of physical abuse. . . including acts of physical restraints, seclusion, and abuse," including an incident witnessed by a parent. *Id.* at *10. However, "[t]here [we]re no facts describing any of the alleged incidents of abuse, the names or positions of the persons who allegedly perpetrated these acts, or any resulting injuries." *Id.* The court found these were "entirely conclusory allegations, which contain no supporting facts," and without "elaboration as to the context of the alleged incidents or resulting injuries," the court granted Key's motion to dismiss the claim without prejudice. *Id.* at *9-10.

The Court finds both cases to be distinguishable. In contrast to the *Jackson* complaint, Plaintiffs' Second Amended Complaint elaborates as to the circumstances of Wooten's conduct and Taylor's resulting injuries. Additionally, unlike the *C.N.* complaint, the wrongful conduct

---

[3] The plaintiffs' substantive due process claims against the school district and school were not challenged in the motion to dismiss.

alleged is not conduct that was authorized by Taylor's IEP. Here, Wooten knew through his MANDT training how to approach a special needs student's kicking behavior, and in response to Taylor's first two kick attempts, Wooten used MANDT. On the third kick attempt, Wooten grabbed Taylor's foot and threw it upwards, driving Taylor to the ground with enough force to cause broken bones and a dislocated wrist. Wooten knew through MANDT training that hyperextending a limb or taking a student off balance created a high likelihood of injury, and given his training and the situation, his "forceful and violent action… constituted reckless misconduct" and "flagrant indifference" to the rights and safety of Taylor. Wooten's actions in "deliberately ignor[ing] his training by forcing a mentally retarded autistic student to the ground" could have shocked the conscience. Reading these allegations in the light most favorable to Plaintiffs, the Court is of the opinion that these allegations state a plausible claim for relief in that they raise a reasonable expectation that discovery will reveal evidence sufficient to establish a substantive due process violation under § 1983.

The parties have cited no binding authority that dictates the conclusion that Plaintiffs' allegations cannot establish a substantive due process violation as a matter of law. Defendants rely on *Golden v. Anders,* as well as some non-binding caselaw wherein students brought § 1983 claims against school districts and/or individual school employees based on the employee's physical contact with a student in response to the student's misbehavior. *See Golden,* 324 F.3d at 651 (principal threw student on a bench and held him down by his neck and collar after student violently kicked a vending machine); *Daniels v. Lutz*, 407 F. Supp. 2d 1038, 1041 (E.D. Ark. 2005) (teacher hit student in side of head with a manila folder and a book after warning students to take their seats, and grabbed student by shirt collar and put her hands on his neck to prevent him from leaving classroom); *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 170

(3d Cir. 2001) (disruptive student was pushed by angry assistant principal, propelling her backwards into a door jam); *Domingo v. Kowalski*, 810 F.3d 403, 407 (6th Cir. 2016) (teacher restrained special needs students and used other inappropriate methods to address known challenging behaviors including spitting, tantrums, screaming, and tripping others).

Defendants point to these cases to argue that Wooten was not afforded the luxury of calm and reflective deliberation when responding to the kick, and so, Wooten's response in defending himself from the kick was reasonable and did not "shock the conscience." The Court acknowledges that some of the aforementioned cases arguably have more offensive facts than those alleged by Plaintiffs. However, the Court finds these cases to be distinguishable for several reasons. First, three of the four cases do not involve a special education student whose misbehavior was a known issue that stemmed from a disability. Second, the courts in each of those cases considered the school employee's conduct based on evidence provided in a motion for summary judgment. Third, the present case involves a third separate occasion where Taylor attempted to kick Wooten. Wooten knew the appropriate techniques and had used them earlier that day in response to the first two kicks, and these techniques did not include grabbing Taylor by the foot and throwing him upwards with enough force to cause broken bones. While discovery may reveal that Defendants' arguments regarding Wooten's conduct have merit, based on Plaintiffs' allegations, it cannot be said that Plaintiffs failed to state a plausible claim.

Defendants argue that without an underlying constitutional violation by Wooten, Plaintiffs cannot state a § 1983 claim against SAB. However, because Plaintiffs have alleged a plausible claim against Wooten, the Court finds that Plaintiffs' argument with respect to the claim against the SAB is without merit. Accordingly, Defendants' Motion to Dismiss Counts I and II is denied.

### 1. Qualified Immunity

In Wooten's separate motion to dismiss, he alleges he is entitled to qualified immunity for Count II because his conduct did not violate clearly established statutory or constitutional rights. A public official is entitled to qualified immunity for discretionary, official acts, unless a reasonable person would have known that his acts violated clearly established law. *Harlow v. Fitzergerald,* 457 U.S. 800, 818 (1982). A public official who "engage[s] in conscious-shocking, egregious behavior that is clearly outside the scope of their discretionary authority" is not entitled to qualified immunity. *Jiang v. Porter*, No. 4:15-cv-1008 (CEJ) 156 F. Supp. 3d 996, 1005 (E.D. Mo. 2015) (quoting *Moran v. Clark,* 359 F.3d 1058, 1060 (8th Cir. 2004)).

As discussed above, the Court finds that for purposes of a motion to dismiss, the allegations set forth a violation of Taylor's substantive due process rights. Wooten argues Plaintiffs seek to impose a constitutional violation for failure to employ a MANDT technique while responding to a student's kick, but as the Court previously discussed, the crux of Plaintiffs' claims is not simply a failure to employ MANDT, it is an attack on Taylor. Wooten also argues his response to being kicked by Taylor is "clearly within the scope of professionally acceptable choices and did not violate a clearly defined right secured by the Constitution." At this point, the Court cannot make such a conclusion, as the allegations are that Wooten grabbed a student by the foot and threw it upwards with enough force to result in broken bones. *Cf. Heidemann v. Rother,* 84 F.3d 1021 (8th Cir. 1996) (where blanket wrapping treatment used by physical therapist was an accepted practice for special education students, the treatment was not a "substantial departure from accepted professional judgment, practice, or standards," and defendant was entitled to qualified immunity). There is a reasonable inference that such conduct is not within the scope of Wooten's discretionary

authority as an ICA who is trained in non-violent methods of addressing disruptive behavior of special education students. Thus, Wooten is not entitled to qualified immunity at this stage.

### C. Recklessness Claim against Wooten

Defendants do not argue Plaintiffs have failed to allege facts constituting a plausible cause of action for recklessness in Count III. Rather, Defendants argue Wooten is immune from the claim because he is entitled to official immunity and absolute immunity.[4]

#### 1. Official Immunity

Wooten argues he is entitled to official immunity because he is a public employee who is immune from claims arising from the performance of discretionary acts. Plaintiffs allege Wooten's conduct was controlled by SAB policies and was therefore ministerial, not discretionary. Plaintiffs further argue that even if Wooten's conduct was arguably discretionary, official immunity does not apply where the act was done with bad faith or malice.

Missouri state law provides official immunity to public officials acting within the scope of their authority for injuries arising from their discretionary acts or omissions, but not for torts committed when acting in a ministerial capacity. *Hutson v. Walker*, 688 F.3d 477, 485 (8th Cir. 2012). However, even a discretionary act will not be protected by official immunity if it is "done with bad faith or with malice," meaning with "actual intent to cause injury." *B.A.G. ex rel. Greer v. Morris*, No. 4:12CV01617 AGF, 2014 WL 4267481, at *2 (E.D. Mo. Aug. 28, 2014) (quoting *Davis v. Board of Education,* 963 S.W.2d 679, 688-89 (Mo. App. 1998)).

For purposes of official immunity under Missouri law, "discretionary acts," require the exercise of reason in the adaption of means to an end, and discretion in determining how or whether

---

[4] Wooten's Motion to Dismiss initially argued sovereign immunity was also applicable. However, as previously discussed, Plaintiffs have clarified they have abandoned claims against Wooten in his official capacity, and as such, Wooten properly abandoned arguments related to sovereign immunity of claims against Wooten in his official capacity.

an act should be done or a course pursued. *Hutson,* 688 F.3d at 485. "Ministerial acts," in contrast, are of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed. *Id.* Ministerial duties can arise from either a statutory or a departmentally-mandated duty, and departmentally mandated duties can arise from department rules, the orders of a superior, or the nature of the position for which the defendant was employed. *Id.* "The party asserting the affirmative defense of official immunity bears the burden of pleading and proving that they are entitled to that defense." *L.G. through M.G. v. Columbia Pub. Sch.*, No. 2:19-CV-04191-NKL, 2020 WL 2441419, at \*7 (W.D. Mo. May 12, 2020) (quoting *Nguyen v. Grain Valley R-5 School District,* 353 S.W.3d 725, 730 (Mo. App. 2011)).

"The test for whether an act is 'discretionary' or 'ministerial' is fact-intensive." *Teague v. St. Charles County,* 708 F.Supp.2d 935, 940-41 (E.D. Mo. 2010) (declining to determine whether official immunity doctrine applies on defendants' motion to dismiss counts for § 1983 violation, failure to train and supervise employees, and negligence); *see also Fortenberry v. City of St. Louis*, No. 4:18-CV-01937-JCH, 2019 WL 1242671, at \*7 (E.D. Mo. Mar. 18, 2019) (finding "[a] more complete record is necessary to dispose of Defendants' Defenses" and the issue of official immunity is more appropriate for a motion for summary judgment). Accordingly, the Court finds these issues are better suited for a motion for summary judgment, and will not dismiss Plaintiffs' tort claim based on official immunity at this time.

### 2. Absolute Immunity

Wooten also alleges he is immune from Count III under the *Paul D. Coverdell Teacher Protection Act of 2001*. The Act states, in relevant part, that no teacher in a school shall be liable for harm caused by an act or omission of the teacher on behalf of the school if -

> (1) The teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity;
> (2) The actions of the teacher were carried out in conformity with Federal, State and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school;
> (3) If appropriate or required, the teacher was properly licensed, certified, or authorized by the appropriate authorities for the activities or practice involved in the state in which the harm occurred, where the activities were or practice was undertaken within the teacher's responsibility;
> (4) The harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher; and
> ***

20 U.S.C. § 7946(a). Wooten argues that his conduct fell under § 7946(a)(2), and because Plaintiffs have not alleged a violation of any law and Wooten's actions arose in the context of efforts to control Taylor and maintain order, he is entitled to immunity. Plaintiffs contend Wooten ignores a more relevant section of the statute, § 7946(a)(4), regarding reckless misconduct or a conscious, flagrant indifference to the rights or safety of the individual harmed. The Court finds that because Plaintiffs have plausibly stated claims against Wooten and on the facts alleged there are still questions regarding whether Wooten's conduct is encompassed by the Act, dismissal of the recklessness claim against Wooten is not warranted at this stage. *See, e.g., L.G. through M.G.*, 2020 WL 2441419, at *10 ("Because L.G.'s negligence claims are tied to alleged federal constitutional violations, the Teacher Protection Act does not warrant dismissal of L.G.'s state law claims at this stage."). Wooten's Motion to Dismiss is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants SAB and Wooten's Motion to Dismiss is **DENIED**. [Doc. 98.]

**IT IS FURTHER ORDERED** that Defendant Wooten's Motion to Dismiss is **DENIED**. [Doc. 100.]

**IT IS FURTHER ORDERED** that Defendants SAB and Wooten's Motion to Stay is **DENIED** as moot. [Doc. 102.]

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of June, 2020.